UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GERARDO AGUILAR TORRES,<br><br>            Petitioner,<br><br>vs.<br><br>YANKTON FPC;<br><br>            Respondent. | 4:21-CV-04055-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is pending before the court on the *pro se* habeas petition pursuant to 28 U.S.C. § 2241 of Gerardo Aguilar Torres, a person confined at the Yankton Prison Camp in Yankton, South Dakota.  See Docket No. 1.  Now pending before the court is a motion to dismiss by respondent ("the government").  See Docket No. 13.  Mr. Torres resists the motion.  See Docket No. 18.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district court judge.

## FACTS

Mr. Torres was sentenced on July 2, 2019, and is currently serving a 70-month sentence for possession of methamphetamine with intent to distribute.  See Docket No. 15-1 at p. 2.  Respondent projects Mr. Torres's release date to be September 2, 2022, via good conduct time release.  Id.

Mr. Torres asserts he is entitled to a credit against his sentence right now of an unspecified number days which he asserts he has earned pursuant to the First Step Act ("FSA"), discussed in more detail below. Docket No. 1.

## DISCUSSION

The First Step Act ("FSA"), Public Law No. 115-391, was enacted into law on December 21, 2018. Mr. Torres invokes the portion of the FSA dealing with an inmate's ability to earn credits allowing him to secure earlier release from prison.

Congress directed the Bureau of Prisons ("BOP") to develop a system to assess each inmate's risks and needs. 18 U.S.C. § 3632(a). That risk and needs assessment tool was required to be completed no later than July 19, 2019. Id. The BOP met this deadline by announcing the development of its Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") tool on July 19, 2019. See Press Release 19-784, U.S. Dep't of Justice, Department of Justice Announces the Release of 3,100 Inmates Under the First Step Act, Publishes Risk and Needs Assessment System, available at https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last checked November 30, 2021).

Congress then directed the BOP to apply this assessment (the PATTERN tool) to determine each inmate's needs for programming appropriate to him. 18 U.S.C. § 3632(a)(3). This step was required to be completed 180 days after the creation of the PATTERN tool, or by January 15, 2020. The BOP met this

deadline by screening all inmates using the PATTERN tool as announced on January 15, 2020.  See Press Release 20-37, U.S. Dep't of Justice, Department of Justice Announces Enhancement to the Risk Assessment System and Updates on First Step Act Implementation, available at https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last checked November 30, 2021).

Congress created in the FSA a system of "time credits" to encourage inmates to participate in the particular programming needed by them as indicated by their PATTERN assessment.  18 U.S.C. § 3632(d).  Under the FSA, time credits may be earned by eligible prisoners who successfully complete the right type of programming or productive activities.  18 U.S.C. § 3632(d)(4)(A).  Time credits for the right kind of programming are awarded at the rate of "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities."  18 U.S.C. § 3632(d)(4)(A)(i).  Not all programs or activities an inmate participates in qualify for these time credits.  Id.; see also 18 U.S.C. § 3635(3), (5).  Inmates may not count time credits earned prior to the enactment of the FSA under these provisions nor may they count programming completed before the commencement of their sentences.  18 U.S.C. § 3632(d)(4)(B).

The final deadline contained in the FSA directs the BOP to phase in the entire program for all prisoners by January 15, 2022.  18 U.S.C. § 3621(h)(2).  During the final phase-in period, the BOP is to provide priority to inmates

based on the proximity of their release dates. 18 U.S.C. § 3621(h)(3). Congress specified that, during the phase-in period, the BOP "may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of" the date of enactment of the FSA. 18 U.S.C. § 3621(h)(4).

Mr. Torres claims he is entitled to an unspecified number of days of programming credit under the FSA, to be applied to his release date immediately. See Docket No. 1. Under the FSA, earned time credits are to be granted based on the number of days of approved programming that the inmate successfully completes using a 1:3 ratio (10 days of earned time credit for every 30 days of successful completion of approved programming). 18 U.S.C. § 3632(d)(4)(A)(i). Not all programs or activities an inmate participates in qualify for these time credits. Id.; see also 18 U.S.C. § 3635(3), (5).

Mr. Torres's claim to receive credit immediately in the here and now for whatever programming he has completed rests upon his reading of the FSA under which the BOP is required to implement the FSA fully right now.

The government argues, to the contrary, that it need not fully implement the FSA until January 15, 2022. See Docket No. 14 at p. 15. Until that date comes, the government argues, Mr. Torres's claim is not ripe. Id. Because Mr. Torres's claim is unripe, the respondent asserts this court is without subject matter jurisdiction to consider his petition. Id.

Chief Judge Roberto A. Lange, in a thorough opinion on this very subject, has ruled in favor of the government, siding with the majority of courts that

have addressed this issue. See Holt v. Warden, 4:20-cv-04064-RAL, 2021 WL 1925503, at *4-6 (D.S.D. May 13, 2021); Cornell v. Bennett, 4:21-cv-04056-RAL, 2021 WL 3417898, at *1 (D.S.D. July 21, 2021). Two opinions contrary to Judge Lange's decision were issued in this district, relying on the minority opinion in Goodman v. Ortiz, Civ. No. 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). See Nelson v. Cox, 4:20-cv-04199-KES, Docket No. 39 (D.S.D. Nov. 24, 2021); O'Bryan v. Cox, CIV 21-4052, 2021 WL 3932275 (D.S.D. Sept. 1, 2021). The Eighth Circuit has now summarily affirmed Judge Lange's opinion. Cornell v. Bennett, No. 21-2731 (8th Cir. Nov. 29, 2021).

This court incorporates by reference herein the entirety of Chief Judge Lange's reasoning and authority. In short, only one court and two judges within this district have ruled that the BOP is under an obligation to begin crediting inmates with earned FSA time credits prior to January 15, 2022. Holt, 2021 WL 1925503, at *5 (citing Goodman v. Ortiz, 2020 WL 5015613). The majority of other courts to address the issue have reached a contrary conclusion. Id. (citing decisions from S.D.N.Y., N.D. Fla., C.D. Ill., E.D. Cal.).

Chief Judge Lange sided with the majority, noting that, regarding implementation of FSA earned credits prior to January 15, 2022, Congress used the permissive word "may," not the mandatory word "shall." Id. Although the court noted that the BOP was evading the spirit of the FSA by not engaging in any phasing-in prior to January 15, 2022, ultimately, Chief Judge Lange concluded that Congress' intent was clear: by using the word "may," the BOP was given discretion as to when earned FSA time credits would be credited

5

toward prisoners' early release so long as they do so fully no later than January 15, 2022.

The court agrees with Chief Judge Lange's analysis. As the BOP has taken the position that it will not apply FSA credits *until* January 15, 2022, Mr. Torres's claim prior to that date is not ripe. Or, another way of characterizing his claim is that he lacks standing: he cannot show he has sustained an injury. Id.

Federal courts are courts of limited jurisdiction—they may adjudicate only those cases within their articulated jurisdiction under Article III of the Constitution or a valid statute enacted pursuant to Article III. Marbury v. Madison, 1 Cranch (5 U.S.) 137, 173-80 (1803). A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's authority and competence to hear the case pending before it. 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure, § 1350, at 64 (3d ed. 2004); Yankton Sioux Tribe v. U.S. Army Corps of Eng'rs, 194 F. Supp. 2d 977, 983 (D.S.D. 2002). "[I]t is a cardinal rule upheld by countless federal cases that [neither the court nor] the parties may not create or destroy jurisdiction by agreement or by consent." 5B Fed. Practice & Procedure, § 1350, at 128. The issue of a federal court's subject matter jurisdiction, or lack thereof, is central to the tenets of judicial federalism, the distribution of judicial power between state and federal courts. Id. at 120-33. Unfortunately, the court concludes it lacks subject matter jurisdiction over Mr. Torres's claim.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting respondent's motion to dismiss [Docket No. 13] and dismissing Mr. Torres's petition without prejudice for lack of subject matter jurisdiction.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED November 30, 2021.

BY THE COURT:

*/s/ Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge